UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HARISH CHANDNA, M.D., DAKSHESH "KUMAR" PARIKH, M.D. AND AJAY GAALLA, M.D,<br>      Plaintiffs | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. _____ |
| CITIZENS MEDICAL CENTER, DAVID P. BROWN, DONALD DAY, JOE BLAND, ANDREW CLEMMONS, M.D., JENNIFER HARTMAN, PAUL HOLM, LUIS GUERRA, and WILLIAM TODD CAMPBELL, JR., M.D.<br>      Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, Harish Chandna, M.D., Dakshesh "Kumar" Parikh, M.D., and Ajay Gaalla, M.D. (collectively "Physicians"), and file this their Original Verified Complaint for Damages, Declaratory Judgment, and Injunctive Relief against Defendants Citizens Medical Center ("CMC"); David P. Brown ("Brown"); Donald Day, Joe Bland, Andrew Clemmons, M.D., Jennifer Hartman, Paul Holm, and Luis Guerra (collectively "Board Member Defendants"); and William Todd Campbell, Jr., M.D. ("Dr. Campbell"), and for cause of action respectfully show this Court the following:

## I.
## PARTIES

1.  Drs. Chandna, Parikh and Gaalla are physicians who are duly licensed to practice medicine in Texas and whose practices are in Victoria County, Texas.

2.   Citizens Medical Center is a county hospital operating in the State of Texas pursuant to Texas Health and Safety Code Chapter 263 and doing business in Victoria County, Texas at 2701 Hospital Drive, Victoria, Texas 77901-5749.   Citizens Medical Center may be served by serving its Administrator, David P. Brown, at 2701 Hospital Drive, Victoria, Texas 77901-5749, or any other address at which he may be found.

3.   David P. Brown is the Administrator of CMC and may be served at his place of employment, 2701 Hospital Drive, Victoria, Texas 77901-5749.

4.   Donald Day is the Chairman of CMC's Board of Directors and may be served at 207 Brocton, Victoria, Texas 77904.

5.   Joe Bland is a member of CMC's Board of Directors and may be served at 203 Westbrook, Victoria, Texas 77904.

6.   Andrew Clemmons, M.D. is a member of CMC's Board of Directors and may be served at 601 E. San Antonio, Victoria, Texas 77901.

7.   Jennifer Hartman is a member of CMC's Board of Directors and may be served at 3202 N. Navarro, Victoria, Texas 77901.

8.   Paul Holm is a member of CMC's Board of Directors and may be served at 120 Main Place, Victoria, Texas 77901.

9.   Luis Guerra is a member of CMC's Board of Directors and may be served at 506 Masters Drive, Victoria, Texas 77904.

10.   William Todd Campbell, Jr., M.D. is a competing cardiovascular physician in the Victoria area who upon information and belief has met with CMC administration and/or the Board Member Defendants and promoted CMC closing the cardiology department for reasons

2

that benefit him financially and who is licensed to practice in the State of Texas.  He may be served at his place of business at 2700 Citizens Plaza, Suite 300, Victoria, Texas  77901.

## II.
## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 2201 and 42 U.S.C. § 1983.

12.     Venue is proper in the Southern District of Texas, Victoria Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in the Southern District of Texas in Victoria County, Texas.

## III.
## FACTS

13.     This case arises from CMC's violation of federal and state law by excluding certain doctors from continuing their practice at the hospital, resulting in patients being denied their right to see the physician of their choice.

14.     The Physicians are cardiologists practicing in Victoria.  Dr. Chandna is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1998.  Dr. Gaalla is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1993.   Dr. Parikh is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1993.

15.     Until they received correspondence from CMC dated February 17, 2010, the Physicians had privileges to practice at CMC and regularly admit patients there.  The letter of February 17, 2010 included an undated and unsigned resolution of the CMC Board ("Board

3

Resolution") that purports to exclude all physicians from the cardiology department who are not contractually committed to CMC to participate in the on-call emergency room coverage program and precludes such physicians from exercising their clinical privileges at CMC. A true and correct copy of the February 17, 2010 letter and the Board Resolution are attached hereto as Exhibit "A" and are fully incorporated herein by reference. The stated basis for removing the Physicians' privileges is "operational problems," leading the Board Member Defendants to conclude that the closure of the cardiology staff and the exclusive use of certain cardiologists will solve the "operational problems." The Physicians assert that these stated reasons are a pretense.

16.     Additionally, on February 17, 2010, Brown (CMC's Administrator) sent a memo to all members of the CMC medical staff notifying them of CMC's decision, which took immediate effect and which set February 24, 2010 as the cutoff date for Physicians to practice cardiology at CMC and exercise their CMC clinical privileges. A true and correct copy of the February 17, 2010 memo to the CMC medical staff is attached hereto as Exhibit "B" and is fully incorporated herein by reference.

17.     The real reason for excluding the Physicians from CMC's medical staff is economic. In complete disregard of federal and state law, CMC has removed the Physicians from the staff because they do not refer all of their surgical patients to Dr. Yusuke Yahagi, a cardiothoracic surgeon who performs his surgeries exclusively at CMC. Instead, the Physicians exercise their independent medical judgment in making referrals, deciding what is in the best interests of their patients. CMC is upset that the Physicians are not making their decisions based on what is in the best economic interests of CMC. An unassociated group of physicians that refer all cardiac surgical cases to Dr. Yahagi (who in turn performs the procedures at CMC) has

been granted the exclusive right to perform cardiovascular surgery services at CMC.   Dr. Campbell is a competing cardiovascular physician who, upon information and belief, has met with CMC administration and/or the Board Member Defendants and promoted CMC's closure of the cardiology department for reasons that benefit him financially.

18.     CMC's actions are prohibited under state and federal law.   CMC's credentialing practices should been based primarily on quality of care criteria and a physician's clinical competence.

19.     CMC's true motives for removing the Physicians' privileges is best demonstrated in correspondence the Physicians received from Donald T. Day, Chairman of CMC's Board of Directors.   On December 16, 2009, Mr. Day wrote each of the Physicians criticizing them for referring surgical patients to another facility. Mr. Day stated as follows:

> As you are aware, bypass surgery is performed at Citizens Medical Center by Dr. Yusuke Yahagi.  Nevertheless, it is our understanding that rather than refer patients to Dr. Yahagi and have a bypass procedure performed at Citizens Medical Center, you refer patients to another cardiovascular surgeon for evaluation.
>
> While it is certainly your right to exercise your medical judgment as you see fit, likewise, it is the responsibility of the Board of Directors at Citizens Medical Center to exercise their judgment as to what is in the best interest of the business of Citizens Medical Center and its patients and Medical Staff.  It is the Board's firm belief that it is in the best interest of Citizens Medical Center for patients who are capable of being treated at Citizens Medical Center to be treated at Citizens Medical Center and not be transferred elsewhere.
>
> In this connection, it is our understanding that, for the past several years, you have not referred cardiac surgical candidates to Dr. Yahagi but, rather, have referred those patients either out of town or to cardiovascular surgeons who do not have privileges at Citizens Medical Center.

A true and correct copy of each of the December 16, 2009 letters to the Physicians are attached hereto as Exhibits "C", "D", and "E" and are fully incorporated herein by reference.

20.     Mr. Day goes on to ask numerous questions about the Physicians' referral patterns, and whether the Physicians "intend to refer future cardiac surgical patients to Dr. Yahagi."  Mr. Day concludes the correspondence by stating, "We are convinced that it is not in the best interest of Citizens Medical Center to have patients at our hospital who are potential cardiac surgical candidates referred to other physicians at other hospitals when Dr. Yahagi is competent to perform these procedures at Citizens Medical Center."  *See* Exhibits "C-E".

21.     This type of correspondence is consistent with the same type of economic pressure the Physicians have received in the past from CMC.  For example, on September 18, 2007, CMC's Administrator, Brown, wrote Dr. Chandna questioning him as to why a patient was discharged to the competing hospital, DeTar Healthcare System, where the patient underwent a successful bypass surgery.

22.     On October 8, 2007, Dr. Parikh received similar correspondence from Brown questioning his admission to the competing hospital even when no such transfer had occurred.  In summary, for several years, CMC has attempted to unduly pressure the Physicians to make decisions in the best economic interests of CMC, rather than decisions based on the health care needs of their patients.

23.     CMC's conduct in trying to force the Physicians to make decisions based on the hospital's economic interests runs directly afoul of the Anti-Kickback Statute.  That statute prohibits the offering, payment, solicitation or receipt of any remuneration in exchange for a patient referral or referral of other business for which payment may be made by a Federal health care program, including Medicare and Medicaid.  CMC has violated this statute by conditioning the grant of privileges on referrals for services or items reimbursable by the federal health care programs, including Medicare and Medicaid.

6

24.     If the Physicians were to adhere to CMC's policy of referring patients based on the hospital's economic interests, they would also be violating the False Claims Act.  Because CMC's policy violates the Anti-Kickback Statute, any claim for medical services submitted for those services would not be in compliance with all applicable laws and regulations.

25.     Despite the pressure from CMC, the Physicians continued to make referrals to the cardiac surgeon they felt best met the healthcare needs of their patients. When the Physicians refused to play by CMC's illegal rules, the hospital retaliated by attempting to remove them from the staff.[1]

## IV.
### CAUSES OF ACTION

**A.     DECLARATORY JUDGMENT**

26.     The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a party, such as Plaintiffs, may seek a declaration of the rights, obligations, and other legal relations of the interested parties.  Furthermore, the Declaratory Judgment Act provides that any such declaration shall have the force and effect of a final judgment or decree.

27.     Plaintiffs seek a declaration that Section 241.1015 of the Texas Health and Safety Code Section prohibits the actions taken by defendants. Section 241.1015 provides in pertinent part as follows:

> (b)  A hospital, by contract or otherwise, may not refuse or fail to grant or renew staff privileges, or condition staff privileges, ***based in whole or in part on the fact*** that the physician or a partner, associate, or employee of the physician ***is providing medical or health care services at a different hospital or hospital system***.
>
> . . .

---

[1] Physicians were required to bring this action on an expedited basis due to CMC's stated deadline of February 24, 2010 to allow Physicians to treat their patients at CMC.  Physicians may need to amend this complaint after adequate time for discovery.

7

(e) This section does not prevent the governing body of a hospital from:

(1) limiting the number of physicians granted medical staff membership or privileges at the hospital based on a medical staff development plan *that is unrelated to a physician's professional or business relationships* or associations including those with another physician or group of physicians or to a physician or a partner, associate, or employee of a physician having medical staff membership or privileges at another hospital or hospital system;

. . .

(f) A contract provision that violates this section is void.

TEX. HEALTH & SAFETY CODE ANN. § 241.1015(b), (e) (Vernon Supp. 2009) (emphasis added).

28. In this case, the Board's Resolution purporting to remove the Physicians' privileges effective February 24, 2010 violates Section 241.1015 and is void. Specifically, CMC and the Board Member Defendants' refusal or failure to grant Plaintiffs' staff privileges (or conditioning their staff privileges) based in whole or in part on the fact that they provide or refer medical services to a different hospital violates Section 241.1015. Therefore, pursuant to 28 U.S.C § 2201, Plaintiffs seek a declaratory judgment that the Board Resolution purporting to remove their privileges at CMC effective February 24, 2010 violates Texas Health and Safety Code section 241.1015 and is void.

29. Furthermore, Plaintiffs seek a declaratory judgment that CMC's decision to remove Plaintiffs' privileges based on their refusal to refer patients to the hospital based on the hospital's economic interests violates 42 U.S.C. § 1320a-7b, the Anti-Kickback Statute.

**B.    VIOLATION OF DUE PROCESS**

30. CMC is a public, tax-supported hospital pursuant to Texas Health and Safety Code Chapter 263 (County Hospitals). CMC is owned and operated by Victoria County, a political subdivision of the State of Texas. As such, actions of CMC are state actions that are subject to the provisions of the Due Process Clause of the U.S. Constitution and the limitations

8

of 42 U.S.C. § 1983.  *See, Foster v. Mobile County Hosp. Bd.*, 398 F.2d 227 (5th Cir. 1958) (noting that actions of a county hospital board are state actions subject to the provisions of the Fourteenth Amendment).

31.    The Physicians are each duly licensed by the Texas Medical Board to practice medicine in the State of Texas.  Dr. Chandna has had medical staff privileges at CMC continuously since December 1998.  Dr. Parikh has had medical staff privileges at CMC continuously since December 1995.  Dr. Gaalla has had medical staff privileges at CMC continuously since August 2000.

32.    Section 1983 provides the Physicians a private cause of action as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ..

42 U.S.C. § 1983.

33.    By its actions described above in closing the cardiology department and restricting the Physicians from exercising their hospital privileges, CMC violated the substantive due process rights of the Physicians and thereby violated 42 U.S.C. § 1983.  CMC, through the Board Member Defendants, acted with improper financial and economic motives, and their actions were pre-textual, arbitrary and capricious.  By its own admission, the Board did not act based on any determination or finding of incompetence or unprofessional conduct by the Physicians.  *See* Exhibit "A" at p. 2 ("This action is not in fact, and should not be interpreted to be, a determination or finding by the Board of incompetent or unprofessional conduct (as set forth in the Health Care Quality Improvement Act) by any physician. . . .").

34.     As a result of CMC's actions, Physicians have and will continue to incur injuries, losses, and damages.

**C.     RICO VIOLATIONS**

35.     Based upon the allegations set forth above, the Physicians bring an action against CMC, the Board Member Defendants, Dr. Campbell, and Brown for violating 18 U.S.C. §1961-1968 (RICO Act).   CMC, the Board Member Defendants and Brown associated together to commit or conspired to commit with Dr. Campbell a pattern of predicate acts, namely violations of the Anti-Kickback Statute, the False Claims Act, and Texas Health and Safety Code section 241.1015.  These defendants engaged in a pattern of racketeering activity that affected interstate commerce.

36.     CMC, the Board Member Defendants, and Brown developed a scheme with Dr. Campbell to exclude the Physicians from practicing at CMC, and thereby damaged the Physicians.  CMC, the Board Member Defendants, and Brown conspired with Dr. Campbell to orchestrate a "consultant" report and create pre-textual reasons for granting exclusive privileges to other cardiologists, when in fact the true reason for excluding the Physicians was for the economic benefit of CMC and Dr. Campbell.  The end result of the RICO violations not only causes economic injury to the Physicians, but also prevents patients from seeing the physician of their choosing at CMC. The actions of these defendants in conspiring to create pre-textual reasons to exclude the Physicians violate the Anti-Kickback Statute, the False Claims Act, and Texas Health and Safety Code section 241.1015.

37.     The Physicians have suffered damages as a result of these defendants' actions and will incur additional damages unless these defendants' unlawful actions are curtailed. Pursuant to

10

18 U.S.C. § 1964(c) of the RICO Act, the Physicians are entitled to treble damages, attorneys' fees, and costs.

**D.     CIVIL CONSPIRACY**

38.     Based upon the allegations set forth above, CMC, the Board Member Defendants, and Brown engaged in a conspiracy with Dr. Campbell to deprive the Physicians of their privileges at CMC, causing the Physicians substantial damage.  In addition, the conspiracy deprives patients at CMC from having the physician of their choice provide their critical medical services.

39.     CMC, the Board Member Defendants, and Brown acted illegally with Dr. Campbell in orchestrating the "consultant" report and creating pre-textual reasons to exclude the Physicians from CMC. CMC's, Brown's, and the Board Member Defendants' true reason for excluding the Physicians from CMC is because they refused to violate the Anti-Kickback Statute and False Claims Act by making referrals to CMC based on the economic dictates of CMC. Rather, the Physicians made referrals based on the best interests of the patients in compliance with their Hippocratic Oath and the law.

40.     When the Physicians refused to "play ball" with CMC, CMC, the Board Member Defendants, and Brown conspired with Dr. Campbell to act illegally to try to achieve the result they wanted—economic benefit at the expense of the Physicians and patients.

**E.     APPLICATION FOR INJUNCTIVE RELIEF**

41.     Plaintiffs ask this Court to restrict CMC from implementing the Board Resolution and limiting the Physicians' exercise of their hospital privileges to provide care and treatment to their patients at CMC.

42.     If Plaintiffs' Application is not granted, immediate and irreparable injury, loss, and damage will result to the Plaintiffs before CMC can be heard in opposition.  Specifically,

11

CMC indicated in its February 17, 2010 memorandum to all members of the CMC medical staff that its closing of the cardiology department was effective immediately and that the Physicians would not be able to attend to any current inpatients after February 24, 2010.  If CMC is not restrained from closing its cardiology department and preventing Physicians from seeing their patients who routinely present to CMC and/or who are admitted to CMC, immediate and irreparable injury, loss and damage to Physicians (as well as their patients) will occur. Specifically, the Physicians will be precluded from treating their cardiology patients that are admitted to CMC.  This will result in the loss of some or all of these patients as well as cause irreparable harm to the Physicians' goodwill with their patients.  Additionally, their patients will be deprived of their right to select the physician of their choice.  There is no adequate remedy at law to alleviate the risk of injury and loss other than that sought by this Application.  As set forth above, Physicians are likely to prevail on their claims in this case.

43.     This Application for Temporary Restraining Order and Injunction is supported by the Verifications of Drs. Chandna, Parikh, and Gaalla.  Contemporaneously with filing this Complaint, counsel for Physicians telephoned counsel for CMC to notify him concerning the injunctive relief sought.

## V.
## JURY DEMAND

44.     Physicians hereby demand a trial by jury for all issues which are triable to a jury, and tender the appropriate fee with this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court issue a temporary restraining order consistent with the terms above; that Defendant be cited to appear and answer; that, upon hearing, a temporary injunction be issued; that, upon final trial, a

permanent injunction be issued; and that Plaintiffs be awarded judgment against Defendants for

the following:

(a)     actual damages as requested above within the jurisdictional limits of the Court;

(b)     exemplary damages and/or punitive damages as requested above as found by the trier of fact;

(c)     pre-judgment and post-judgment interest at the highest lawful rates;

(d)     reasonable and necessary attorney's fees and expenses incurred in the prosecution of this suit;

(e)     all costs of court;

(f)     all other relief, in law or equity, to which Plaintiffs may be entitled.

                               Respectfully submitted,

                               JACKSON WALKER L.L.P.
                               100 Congress Avenue, Suite 1100
                               Austin, Texas 78701
                               (512) 236-2000 (Telephone)
                               (512) 236-2002 (Facsimile)

                         By:     <u>/s/ Monte F. James</u>
                               <u>/s/ Christopher Mugica</u>
                               Monte F. James
                               Attorney-in-Charge
                               State Bar No. 10547520
                               Southern District Bar No. 29591
                               Marian J. Wu
                               State Bar No. 00790971
                               Southern District Bar No. 29760
                               Joshua A. Romero
                               State Bar No. 24046754
                               Southern District Bar No. 725205
                               Christopher Mugica
                               State Bar No. 24027554
                               Southern District Bar No. 29098
                    and
                               David W. Hilgers
                               State Bar No. 09622500
                               BROWN McCARROLL LLP
                               111 Congress Avenue, Suite 1400
                               Austin, Texas 78701
                               (512) 472-5456 (Telephone)
                               (512) 479-1101 (Facsimile)

                               ATTORNEYS FOR PLAINTIFFS

13

**VERIFICATION**

STATE OF TEXAS          §
                        §
COUNTY OF VICTORIA      §

ON THIS DAY, Harish Chandna, M.D., personally appeared before me, the undersigned notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' Original Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement contained in Paragraphs 12-22, 25, 31, 34, and 36-43 of the Complaint is within his personal knowledge and is true and correct.

Harish Chandna, M.D.

SUBSCRIBED AND SWORN TO BEFORE ME on this the 24th day of February, 2010, by _____HARISH CHANDNA_____

Notary Public in and for the State of Texas

## **VERIFICATION**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF VICTORIA | § |

ON THIS DAY, Dakshesh Parikh, M.D., personally appeared before me, the undersigned notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' Original Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement contained in Paragraphs 12-22, 25, 31, 34, and 36-43 of the Complaint is within his personal knowledge and is true and correct.

_____
Dakshesh Parikh, M.D.

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of February, 2010, by _____

_____
Notary Public in and for the State of Texas

NORMA G RAMIREZ
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
07-16-2011

15

## **VERIFICATION**

STATE OF TEXAS        §
                              §
COUNTY OF VICTORIA  §

ON THIS DAY, Ajay Gaalla, M.D., personally appeared before me, the undersigned notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' Original Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement contained in Paragraphs12-22, 25, 31, 34, and 36-43 of the Complaint is within his personal knowledge and is true and correct.

_____
Ajay Gaalla, M.D.

SUBSCRIBED AND SWORN TO BEFORE ME on this the 24th day of February, 2010, by _____.

_____
Notary Public in and for the State of Texas

16

# EXHIBIT A

Feb. 17. 2010 11:02AM    Cullen, Carsner, Seerden LLP                    No. 8282    P.  1

# CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.

Attorneys and Counselors at Law
P. O. Box 2938
119 S. Main
Victoria, Texas 77902-2938
Telephone: (361) 573-6318
Fax: (361) 573-2603

\*WILLIAM F. SEERDEN
\*KEVIN D. CULLEN
JEAN S. CULLEN
W. CLAYTON CAIN
PATRICK A. CULLEN
\*BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

RICHARD D. CULLEN
(1927-2008)
CHARLES C. CARSNER, JR.
(1917-1993)

February 17, 2010

David Hilgers                                    SENT BY FAX 512-480-5019
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, TX 78701-4093

Re:    Citizens Medical Center / Doctors  Chandna, Parikh and Gaalla

Dear Mr. Hilgers:

On behalf of Citizens Medical Center ("Citizens") I am writing this letter to you in your capacity as counsel for Doctors Harish Chandna, Dakshesh Parikh and Ajay Gaalla.  In that regard I am attaching a Resolution unanimously adopted earlier today by the Board of Citizens in which the Board took an action that affects the exercise of cardiology-related clinical privileges by Doctors Chandna, Parikh and Gaalla at Citizens.  We assume that you will convey this Resolution and action to them and that, as the Resolution reflects, they can be assured that this action is not in any way an adverse medical staff peer review action against them and is not reportable to any governmental organization.

This action is effective immediately.  However, in an attempt to minimize patient inconvenience, your clients will be allowed to continue providing cardiology care to those current inpatients until discharge or Wednesday, February 24, 2010, whichever occurs first.  In the event a particular inpatient(s) requires continued hospitalization and cardiology care after February 24, 2010, an exception to this deadline will be considered upon written request.  Said request should contain an explanation as to why continued cardiology care by your clients is necessary to the patient's well being.

We believe that Texas law is clear that the governing board of a hospital maintains the power and authority to close a hospital department when it determines that such closure is in the best interest of the hospital.  See Tenet Health Ltd. d/b/a Brownsville Medical Center v. Zamora, 13 SW3d 464 (Tex.App-Corpus Christi 2000, writ dism. w.o.j.)  (attached for your convenience). Further, the Bylaws of Citizens specifically permits the Board to close a department if it determines that such action furthers the Hospital's mission and purposes.  As the attached Resolution confirms, the Board of Citizens has determined that the cardiology department closure is consistent with the Hospital's mission and purposes and is in the best interest of the Hospital.



Exhibit A

Page 2

I also want to respond to your letter of January 11, 2010 written to Citizens in response to its letter of December 16, 2009.   Let me first say, respectfully but strongly, that you have misinterpreted and mischaracterized the intent and language of the December 16th letter.   The Citizens Board was trying to gather information as to the cause(s) of friction between your clients and Citizens' only cardiovascular surgeon and whether or not that friction was likely to continue to exist in the future.   This is a legitimate issue that is relevant to the effective operations of the cardiology department and the delivery of quality patient care services to the public.   With all due respect, your insinuation of illegal conduct is completely unfounded.

In closing, Jerry and I are more than willing to meet with you in Austin to discuss this matter.

Yours very truly,

Kevin D. Cullen
KDC:cmo
Enclosures

cc:      Jerry Bell

# RESOLUTION

The Board makes the following findings:

1.      The Hospital maintains a heart program (called the "Heart Hospital") that provides substantial benefits to the public.

2.      The Executive Committee of the medical staff has attempted to address difficulties within the cardiology department, without success, and has requested that the Board find a solution to this ongoing problem.

3.      The Hospital heart program is now experiencing operational problems and difficulties that in the judgment of the Board (i) are disruptive to the effective and efficient operations of the heart program, and unless corrected will likely disrupt patient care and adversely affect the delivery by the Hospital of quality health care services to the public and (ii) materially threaten the continued viability of the heart program and the ability of the Hospital to provide a full service heart program.

4.      The Hospital has consulted with and received an opinion from a qualified and independent consultant that a reasonable solution to correct the operational problems set forth above, is to close and limit the Hospital's cardiology department exclusively to one group of cardiologists, and likewise close its cardiology surgery staff such that Dr. Yusuke Yahagi is the only member of the medical staff with cardiovascular surgical privileges.

5.      The closure of the cardiology department and the cardiovascular surgical medical staff membership would be consistent with and in furtherance of the mission and purposes of the Hospital and accordingly such action would be consistent with the Board's authority set forth in Section 6(c) of the Hospital Bylaws.

Based on the above findings, the Board takes the following action:

(1)    Only those physicians who are contractually committed to the Hospital to participate in the Hospital's on-call emergency room coverage program shall be permitted to exercise clinical privileges in the cardiology department or as part of the Hospital's heart program.

(2)    This action is entirely an administrative action of the Board. This action is not in fact, and should not be interpreted to be, a determination or finding by the Board of incompetent or unprofessional conduct (as set forth in the Health Care Quality Improvement Act) by any physician, and no report to the Texas Medical Board or National Practitioners Data Bank regarding any individual physician is required or will be made as a result of this action.

(3)    Ratify the Hospital's contract with Dr. Yusuke Yahagi which grants him the exclusive cardiovascular surgical privileges at the Hospital and contractually obligates him to provide those services to the Hospital's patients and physicians.

(4)    As with other policies, this action will be reviewed on an annual basis to determine whether the foregoing specialties of the medical staff should remain closed.

2

# EXHIBIT B

# Doctor's Page

### Information for Citizens Medical Staff

February 17, 2010

MEMO TO:  All Members of the Medical Staff

FROM: David P. Brown, Administrator

SUBJECT:  *Cardiovascular Surgery & Cardiology Services*

After consideration, the Board of Directors has closed the department of cardiovascular surgery such that Dr. Yusuke Yahagi will be the exclusive provider of cardiovascular surgery.  Additionally, the Board of Directors has closed the department of cardiology such that Doctors Campbell, Krueger, Oakley, Tillman, and Junor will be the exclusive provider of cardiology services at Citizens Medical Center.  Other cardiologists will remain as members of the Medical Staff but will not be able to practice cardiology at Citizens Medical Center.  While this action is effective immediately, other cardiologists will be able to attend to current inpatients until discharge or February 24, 2010 whichever occurs first.

Please let me know if you have any further questions.

DPB/slj

## Exhibit B



Citizens Medical Center
*The Heart Hospital*

# EXHIBIT C



**Citizens**
MEDICAL CENTER
*The*
*Heart*
Hospital

December 16, 2009

Dakshesh K. Parikh, M. D.
2104 Patterson Drive
Victoria, Texas   77901

Dear Dr. Parikh:

I am the Chairman of the Board of Directors at Citizens Medical Center.  As you are aware, bypass surgery is performed at Citizens Medical Center by Dr. Yusuke Yahagi.  Nevertheless, it is our understanding that rather than refer patients to Dr. Yahagi and have a bypass procedure performed at Citizens Medical Center, you refer patients to another cardiovascular surgeon for evaluation.

While it is certainly your right to exercise your medical judgment as you see fit, likewise, it is the responsibility of the Board of Directors at Citizens Medical Center to exercise their judgment as to what is in the best interest of the business of Citizens Medical Center and its patients and Medical Staff.  It is the Board's firm belief that it is in the best interest of Citizens Medical Center for patients who are capable of being treated at Citizens Medical Center to be treated at Citizens Medical Center and not be transferred elsewhere.

In this connection, it is our understanding that, for the past several years, you have not referred cardiac surgical candidates to Dr. Yahagi but, rather, have referred those patients either out of town or to cardiovascular surgeons who do not have privileges at Citizens Medical Center.

In connection with the foregoing, the Board of Directors of Citizens Medical Center has the following questions that we request you respond to in writing:

1.  In the calendar year 2008 and 2009 how many surgical patients have you referred to Dr. Yahagi or asked Dr. Yahagi to consult with?

2.  In the calendar year 2008 and 2009 approximately how many Citizens Medical Center patients who were potential cardiac surgical candidates have you referred to cardiovascular surgeons other than Dr. Yahagi or Dr. Taylor when he had privileges at Citizens Medical Center?

3.  Do you intend to refer future cardiac surgical patients to Dr. Yahagi?

4.  Why have you made these referrals to doctors other than Dr. Yahagi?

5.  Do you intend to continue with this same practice in the future?

Please understand that the Hospital Board acknowledges that it is your right and, in fact, your duty to refer patients to physicians that you believe are in the patient's best interest.  It is not the goal of the Board of Directors to ask you to compromise your judgment in any fashion.  At the same time, it is

 2701 Hospital Drive       Victoria, Texas  77901-5749      •      (361)573-9181

- 26 -



Letter to Dr. Dakshesh Parikh
December 16, 2009
Page 2 of 2

the duty and obligation of the Board of Directors of Citizens Medical Center to do what is best for
Citizens Medical Center. We are convinced that it is not in the best interest of Citizens Medical
Center to have patients at our hospital who are potential cardiac surgical candidates referred to other
physicians at other hospitals when Dr. Yahagi is competent to perform these procedures at Citizens
Medical Center.

We request that you provide us with a written response to the questions listed above by
January 10, 2010 so that we may take them into account during your reappointment process should
you choose to reapply for Medical Staff membership and clinical privileges at Citizens Medical
Center.

Sincerely,

Donald T. Day
Chairman, Board of Directors

DTD/slj

Certified Mail #7004 1350 0002 0510 9977
Return Receipt Requested

# EXHIBIT D



**Citizens**
MEDICAL CENTER
*The*
*Heart*
Hospital

December 16, 2009

Harish Chandna, M. D.
2104 Patterson Drive
Victoria, Texas   7790)

Dear Dr. Chandna:

I am the Chairman of the Board of Directors at Citizens Medical Center. As you are aware, bypass surgery is performed at Citizens Medical Center by Dr. Yusuke Yahagi. Nevertheless, it is our understanding that rather than refer patients to Dr. Yahagi and have a bypass procedure performed at Citizens Medical Center, you refer patients to another cardiovascular surgeon for evaluation.

While it is certainly your right to exercise your medical judgment as you see fit, likewise, it is the responsibility of the Board of Directors at Citizens Medical Center to exercise their judgment as to what is in the best interest of the business of Citizens Medical Center and its patients and Medical Staff. It is the Board's firm belief that it is in the best interest of Citizens Medical Center for patients who are capable of being treated at Citizens Medical Center to be treated at Citizens Medical Center and not be transferred elsewhere.

In this connection, it is our understanding that, for the past several years, you have not referred cardiac surgical candidates to Dr. Yahagi but, rather, have referred those patients either out of town or to cardiovascular surgeons who do not have privileges at Citizens Medical Center.

In connection with the foregoing, the Board of Directors of Citizens Medical Center has the following questions that we request you respond to in writing:

1.  In the calendar year 2008 and 2009 how many surgical patients have you referred to Dr. Yahagi or asked Dr. Yahagi to consult with?

2.  In the calendar year 2008 and 2009 approximately how many Citizens Medical Center patients who were potential cardiac surgical candidates have you referred to cardiovascular surgeons other than Dr. Yahagi or Dr. Taylor when he had privileges at Citizens Medical Center?

3.  Do you intend to refer future cardiac surgical patients to Dr. Yahagi?

4.  Why have you made these referrals to doctors other than Dr. Yahagi?

5.  Do you intend to continue with this same practice in the future?

Please understand that the Hospital Board acknowledges that it is your right and, in fact, your duty to refer patients to physicians that you believe are in the patient's best interest. It is not the goal of the Board of Directors to ask you to compromise your judgment in any fashion. At the same time, it is

2701 Hospital Drive     •     Victoria, Texas  77901-5749     •     (361)573-9181

- 28 -



Letter to Dr. Harish Chandra
December 16, 2009
Page 2 of 2

the duty and obligation of the Board of Directors of Citizens Medical Center to do what is best for
Citizens Medical Center. We are convinced that it is not in the best interest of Citizens Medical
Center to have patients at our hospital who are potential cardiac surgical candidates referred to other
physicians at other hospitals when Dr. Yahagi is competent to perform these procedures at Citizens
Medical Center.

We request that you provide us with a written response to the questions listed above by
January 10, 2010 so that we may take them into account during your reappointment process should
you choose to reapply for Medical Staff membership and clinical privileges at Citizens Medical
Center.

Sincerely,

Donald T. Day
Chairman, Board of Directors

DTD/slj

Certified Mail #7004 1350 0002 0510 9960
Return Receipt Requested

# EXHIBIT E



**Citizens**
MEDICAL CENTER
*The Heart Hospital*

December 16, 2009

Ajay Kumar Gaalla, M. D.
2104 Patterson Drive
Victoria, Texas   77901

Dear Dr. Gaalla:

I am the Chairman of the Board of Directors at Citizens Medical Center. In that capacity, it has been brought to the Board's attention that on or about November 21, 2009, after performing a catheterization procedure on patient number 284744, you made a medical decision that the patient needed evaluation for possible bypass surgery. As you are aware, bypass surgery is performed at Citizens Medical Center by Dr. Yusuke Yahagi. Nevertheless, it is our understanding that rather than refer this patient to Dr. Yahagi and have a bypass procedure performed at Citizens Medical Center, you referred this patient to another cardiovascular surgeon for evaluation.

While it is certainly your right to exercise your medical judgment as you see fit, likewise, it is the responsibility of the Board of Directors at Citizens Medical Center to exercise their judgment as to what is in the best interest of the business of Citizens Medical Center and its patients and Medical Staff. It is the Board's firm belief that it is in the best interest of Citizens Medical Center for patients who are capable of being treated at Citizens Medical Center to be treated at Citizens Medical Center and not be transferred elsewhere.

In this connection, it is our understanding that, for the past several years, you have not referred cardiac surgical candidates to Dr. Yahagi but, rather, have referred those patients either out of town or to cardiovascular surgeons who do not have privileges at Citizens Medical Center.

In connection with the foregoing, the Board of Directors of Citizens Medical Center has the following questions that we request you respond to in writing:

1.  In the calendar year 2008 and 2009 how many surgical patients have you referred to Dr. Yahagi or asked Dr. Yahagi to consult with?

2.  In the calendar year 2008 and 2009 approximately how many Citizens Medical Center patients who were potential cardiac surgical candidates have you referred to cardiovascular surgeons other than Dr. Yahagi or Dr. Taylor when he had privileges at Citizens Medical Center?

3.  Do you intend to refer future cardiac surgical patients to Dr. Yahagi?

4.  Why have you made these referrals to doctors other than Dr. Yahagi?  **Exhibit** E

5.  Do you intend to continue with this same practice in the future?

2701 Hospital Drive   •   Victoria - 24 -, 77901-5749   •   (361)573-9181

Letter to Dr. Ajay Kumar Goalla
December 16, 2009
Page 2 of 2

Please understand that the Hospital Board acknowledges that it is your right and, in fact, your duty to refer patients to physicians that you believe are in the patient's best interest. It is not the goal of the Board of Directors to ask you to compromise your judgment in any fashion. At the same time, it is the duty and obligation of the Board of Directors of Citizens Medical Center to do what is best for Citizens Medical Center. We are convinced that it is not in the best interest of Citizens Medical Center to have patients at our hospital who are potential cardiac surgical candidates referred to other physicians at other hospitals when Dr. Yahagi is competent to perform these procedures at Citizens Medical Center.

We request that you provide us with a written response to the questions listed above by January 10, 2010 so that we may take them into account during your reappointment process should you choose to reapply for Medical Staff membership and clinical privileges at Citizens Medical Center.

Sincerely,

Donald T. Day
Chairman, Board of Directors

DTD/slj

Certified Mail #7004 1350 0002 0510 9953
Return Receipt Requested