UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HARISH CHANDNA, M.D., DAKSHESH "KUMAR" PARIKH, M.D., and AJAY GAALLA, M.D, <br>    Plaintiffs <br><br> v. <br><br> CITIZENS MEDICAL CENTER, DAVID P. BROWN, DONALD DAY, JOE BLAND, ANDREW CLEMMONS, M.D., JENNIFER HARTMAN, PAUL HOLM, LUIS GUERRA, and WILLIAM TODD CAMPBELL, JR., M.D. <br>    Defendants | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 6:10-CV-00014 <br><br> JURY |

## PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE JACK:

COME NOW Plaintiffs, Harish Chandna, M.D., Dakshesh "Kumar" Parikh, M.D., and Ajay Gaalla, M.D. (collectively "Physicians" or "Plaintiffs"), and file this their First Amended Verified Complaint for Damages, Declaratory Judgment, and Injunctive Relief[1] against Defendants Citizens Medical Center ("CMC"); David P. Brown ("Brown"); Donald Day, Joe Bland, Andrew Clemmons, M.D., Jennifer Hartman, Paul Holm, and Luis Guerra (collectively "Board Member Defendants"); and William Todd Campbell, Jr., M.D. ("Dr. Campbell"), and for cause of action respectfully show this Court the following:

---

[1] This Amended Complaint is being filed prior to the Defendants' answer and therefore leave of court is not being sought. *See* FED. R. CIV. P. 15 (a)(1).

# I.
# PARTIES

1.      Drs. Chandna, Parikh and Gaalla are physicians who are duly licensed to practice medicine in Texas and whose practices are in Victoria County, Texas.

2.      Citizens Medical Center is a county hospital operating in the State of Texas pursuant to Texas Health and Safety Code Chapter 263 and doing business in Victoria County, Texas at 2701 Hospital Drive, Victoria, Texas 77901-5749.  Citizens Medical Center may be served by serving its Administrator, David P. Brown, at 2701 Hospital Drive, Victoria, Texas 77901-5749, or any other address at which he may be found.  Citizens Medical Center's counsel has agreed to accept service on its behalf.

3.      David P. Brown is the Administrator of CMC and may be served at his place of employment, 2701 Hospital Drive, Victoria, Texas 77901-5749.  Mr. Brown's counsel has agreed to accept service on his behalf.

4.      Donald Day is the Chairman of CMC's Board of Directors and may be served at 207 Brocton, Victoria, Texas 77904.  Mr. Day's counsel has agreed to accept service on his behalf.

5.      Joe Bland is a member of CMC's Board of Directors and may be served at 203 Westbrook, Victoria, Texas 77904.  Mr. Bland's counsel has agreed to accept service on his behalf.

6.      Andrew Clemmons, M.D. is a member of CMC's Board of Directors and may be served at 601 E. San Antonio, Victoria, Texas 77901.  Dr. Clemmons' counsel has agreed to accept service on his behalf.

2

7.     Jennifer Hartman is a member of CMC's Board of Directors and may be served at 3202 N. Navarro, Victoria, Texas 77901.  Ms. Hartman's counsel has agreed to accept service on her behalf.

8.     Paul Holm is a member of CMC's Board of Directors and may be served at 120 Main Place, Victoria, Texas 77901.  Mr. Holm's counsel has agreed to accept service on his behalf.

9.     Luis Guerra is a member of CMC's Board of Directors and may be served at 506 Masters Drive, Victoria, Texas 77904.  Mr. Guerra's counsel has agreed to accept service on his behalf.

10.    William Todd Campbell, Jr., M.D. is a cardiovascular physician licensed to practice in the State of Texas.  He may be served at his place of business at 2700 Citizens Plaza, Suite 300, Victoria, Texas  77901.  Dr. Campbell's counsel has agreed to accept service on his behalf.

## II.
## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 2201 and 42 U.S.C. § 1983.

12.    Venue is proper in the Southern District of Texas, Victoria Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in the Southern District of Texas in Victoria County, Texas.  This case has properly been transferred to the Corpus Christi Division of the Southern District of Texas due to a judicial conflict.

## III.
## FACTS

13.     This case arises from CMC's violation of federal and state law by excluding certain doctors from continuing their practice at the hospital, resulting in patients being denied their right to see the physician of their choice.

14.     The Physicians are cardiologists practicing in Victoria. Dr. Chandna is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1998. Dr. Gaalla is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1993. Dr. Parikh is Board Certified in Interventional Cardiology and Cardiovascular Diseases and has been licensed in Texas since 1993.

15.     Until they received correspondence from CMC dated February 17, 2010, the Physicians had privileges to practice at CMC and regularly admit patients there. The letter of February 17, 2010 included an undated and unsigned resolution of the CMC Board ("Board Resolution") that purports to exclude all physicians from the cardiology department who are not contractually committed to CMC to participate in the on-call emergency room coverage program and precludes such physicians from exercising their clinical privileges at CMC. A true and correct copy of the February 17, 2010 letter and the Board Resolution are attached hereto as Exhibit "A" and are fully incorporated herein by reference. The stated basis for removing the Physicians' privileges is "operational problems," purportedly leading the Board Member Defendants to conclude that the closure of the cardiology staff and the exclusive use of certain cardiologists will solve the "operational problems." The Physicians assert that these stated reasons are a pretense.

16.     Additionally, on February 17, 2010, Brown (CMC's Administrator) sent a memo to all members of the CMC medical staff notifying them of CMC's decision to exclude the Physicians, which took immediate effect and set February 24, 2010 as the deadline for the Physicians to cease their cardiology practice and clinical privileges at CMC. A true and correct copy of the February 17, 2010 memo to the CMC medical staff is attached hereto as Exhibit "B" and is fully incorporated herein by reference.

17.     The real reason for excluding the Physicians from CMC's medical staff is economic. In complete disregard of federal and state law, CMC has removed the Physicians from the staff because they do not refer all of their surgical patients to Dr. Yusuke Yahagi, a cardiothoracic surgeon who performs his surgeries exclusively at CMC. Instead, the Physicians exercise their independent medical judgment in making referrals based on the best interests of their patients. CMC is upset that the Physicians are not making their decisions based on the best economic interests of CMC. An unassociated group of physicians that refer all cardiac surgical cases to Dr. Yahagi (who in turn performs the procedures at CMC) has been granted the exclusive right to perform cardiology services at CMC. Upon information and belief, Dr. Campbell, a member of that group and a competing cardiovascular physician, has met with CMC administration and/or the Board Member Defendants and promoted CMC's closure of the cardiology department for reasons that benefit him financially.

18.     CMC's actions are prohibited under state and federal law. CMC's credentialing practices should have been based primarily on quality of care criteria and the Plaintiffs' clinical competence, and not on the financial interests of CMC.

19.     CMC's true motives for removing the Physicians' privileges is best demonstrated in correspondence the Physicians received from Donald T. Day, Chairman of CMC's Board of

5

Directors. On December 16, 2009, Mr. Day wrote each of the Physicians criticizing them for referring surgical patients to another facility. Mr. Day stated as follows:

> As you are aware, bypass surgery is performed at Citizens Medical Center by Dr. Yusuke Yahagi. Nevertheless, it is our understanding that rather than refer patients to Dr. Yahagi and have a bypass procedure performed at Citizens Medical Center, you refer patients to another cardiovascular surgeon for evaluation.
>
> While it is certainly your right to exercise your medical judgment as you see fit, likewise, it is the responsibility of the Board of Directors at Citizens Medical Center to exercise their judgment as to what is in the best interest of the business of Citizens Medical Center and its patients and Medical Staff. It is the Board's firm belief that it is in the best interest of Citizens Medical Center for patients who are capable of being treated at Citizens Medical Center to be treated at Citizens Medical Center and not be transferred elsewhere.
>
> In this connection, it is our understanding that, for the past several years, you have not referred cardiac surgical candidates to Dr. Yahagi but, rather, have referred those patients either out of town or to cardiovascular surgeons who do not have privileges at Citizens Medical Center.

A true and correct copy of each of the December 16, 2009 letters to the Physicians are attached hereto as Exhibits "C", "D", and "E" and are fully incorporated herein by reference.

20.     Mr. Day goes on to ask numerous questions about the Physicians' referral patterns, and whether the Physicians "intend to refer future cardiac surgical patients to Dr. Yahagi." Mr. Day concludes the correspondence by stating, "We are convinced that it is not in the best interest of Citizens Medical Center to have patients at our hospital who are potential cardiac surgical candidates referred to other physicians at other hospitals when Dr. Yahagi is competent to perform these procedures at Citizens Medical Center." Exhibits "C-E".

21.     This type of correspondence is consistent with the same type of economic pressure the Physicians have received in the past from CMC. For example, on September 18, 2007, CMC's Administrator, Brown, wrote Dr. Chandna questioning him as to why a patient was

discharged to the competing hospital, DeTar Healthcare System, where the patient underwent a successful bypass surgery.

22. On October 8, 2007, Dr. Parikh received similar correspondence from Brown questioning his admission to the competing hospital even when no such transfer had occurred. In summary, for several years, CMC has attempted to unduly pressure the Physicians to make decisions in the best economic interests of CMC, rather than decisions based on the health care needs of their patients.

23. CMC's conduct in trying to force the Physicians to make decisions based on the hospital's economic interests runs directly afoul of the Anti-Kickback Statute. That statute prohibits the offering, payment, solicitation or receipt of any remuneration in exchange for a patient referral or referral of other business for which payment may be made by a Federal health care program, including Medicare and Medicaid. CMC has violated this statute by conditioning the grant of privileges on referrals for services or items reimbursable by the federal health care programs, including Medicare and Medicaid.

24. If the Physicians were to adhere to CMC's policy of referring patients based on the hospital's economic interests, they would also be violating the False Claims Act. Because CMC's policy violates the Anti-Kickback Statute, any claim for medical services submitted for those services would not be in compliance with all applicable laws and regulations.

25. Despite the pressure from CMC, the Physicians continued to make referrals to the cardiac surgeon they felt best met the health care needs of their patients. When the Physicians refused to play by CMC's illegal rules, the hospital retaliated by effectively removing them from the staff. The Physicians were removed from the staff for pre-textual reasons and were denied due process.

7

26.     Further, in addition to violating the Anti-Kickback Statute, CMC is engaged in the unauthorized practice of medicine by illegally employing the five cardiologists who retained their clinical privileges at CMC following the Board Resolution.   In 2007 and 2008, CMC entered into Physician Employment Agreements with five cardiologists—Drs. Krueger, Tillman, Campbell, Oakley, and Junor.   Under the Physician Employment Agreements, CMC employs the cardiologists, bills and collects for the services they provide, pays the physicians a salary, and the physicians and their medical practice activities are subject to the control of CMC.   Specifically, the Agreements between CMC and Drs. Campbell, Krueger and Oakley state, "The relationship between [CMC] and [Dr. Campbell/Krueger/Oakley] shall be that of an employer and employee. Employee shall be in the paid service of [CMC] (a governmental unit) and, as such, [CMC] has the legal right to control the tasks performed by [the doctors] pursuant to this Agreement. Employee shall not be an independent contractor."   The Agreements between CMC and Drs. Tillman and Junor state that "the relationship between [CMC] and [Dr. Tillman/Junor] shall be that of an employer and employee.   Employee shall be considered and treated as having an employee status."   This type of employment relationship with physicians is illegal. Because of this inappropriate relationship, CMC is engaged in the unauthorized practice of medicine.

## IV.
### CAUSES OF ACTION

## A.     <u>DECLARATORY JUDGMENT</u>

27.     The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a party, such as the Physicians, may seek a declaration of the rights, obligations, and other legal relations of the interested parties.   Furthermore, the Declaratory Judgment Act provides that any such declaration shall have the force and effect of a final judgment or decree.

28.     The Physicians seek a declaration that Section 241.1015 of the Texas Health and Safety Code Section prohibits the actions taken by the Defendants. Section 241.1015 provides in pertinent part as follows:

> (b) A hospital, by contract or otherwise, may not refuse or fail to grant or renew staff privileges, or condition staff privileges, *based in whole or in part on the fact* that the physician or a partner, associate, or employee of the physician *is providing medical or health care services at a different hospital or hospital system*.
>
> . . .
>
> (e) This section does not prevent the governing body of a hospital from:
>
> > (1) limiting the number of physicians granted medical staff membership or privileges at the hospital based on a medical staff development plan *that is unrelated to a physician's professional or business relationships* or associations including those with another physician or group of physicians or to a physician or a partner, associate, or employee of a physician having medical staff membership or privileges at another hospital or hospital system;
> >
> > . . .
>
> (f) A contract provision that violates this section is void.

TEX. HEALTH & SAFETY CODE ANN. § 241.1015(b), (e) (Vernon Supp. 2009) (emphasis added).

29.     In this case, the Board's Resolution purporting to remove the Physicians' privileges effective February 24, 2010 violates Section 241.1015 and is void. Specifically, CMC and the Board Member Defendants' refusal or failure to grant the Physicians' staff privileges (or conditioning their staff privileges) based in whole or in part on the fact that they provide or refer medical services to a different hospital violates Section 241.1015. Therefore, pursuant to 28 U.S.C § 2201, Plaintiffs seek a declaratory judgment that the Board Resolution purporting to remove or severally limit their privileges at CMC effective February 24, 2010 violates Texas Health and Safety Code section 241.1015 and is void.

30.     Furthermore, the Physicians seek a declaratory judgment that CMC's decision to remove or severely limit the Physicians' privileges based on their refusal to refer patients to the hospital based on the hospital's economic interests violates 42 U.S.C. § 1320a-7b, the Anti-Kickback Statute.

## B.     VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS

31.     CMC is a public, tax-supported hospital pursuant to Texas Health and Safety Code Chapter 263 (County Hospitals).   CMC is owned and operated by Victoria County, a political subdivision of the State of Texas.   As such, actions of CMC are state actions that are subject to the provisions of the Due Process Clause of the U.S. Constitution and the limitations of 42 U.S.C. § 1983. *See Foster v. Mobile County Hosp. Bd.*, 398 F.2d 227, 230 (5th Cir. 1958) (recognizing that actions of a county hospital board are state actions subject to the provisions of the Fourteenth Amendment).

32.     The Physicians are each duly licensed by the Texas Medical Board to practice medicine in the State of Texas.   Dr. Chandna has had medical staff privileges at CMC continuously since December 1998.   Dr. Parikh has had medical staff privileges at CMC continuously since December 1995.   Dr. Gaalla has had medical staff privileges at CMC continuously since August 2000.

33.     Section 1983 provides the Physicians a private cause of action as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

10

34.     By its actions described above in closing the cardiology department and restricting the Physicians from exercising their hospital privileges, CMC violated the substantive due process rights of the Physicians and thereby violated 42 U.S.C. § 1983. CMC, through the Board Member Defendants, acted with improper financial and economic motives, and their actions were pre-textual, arbitrary and capricious. By its own admission, the Board did not act based on any determination or finding of incompetence or unprofessional conduct by the Physicians. *See* Exhibit "A" at p. 2 ("This action is not in fact, and should not be interpreted to be, a determination or finding by the Board of incompetent or unprofessional conduct (as set forth in the Health Care Quality Improvement Act) by any physician. . . .").

35.     Despite the Board's statement in the Board Resolution that its action was not based on a finding of incompetence or unprofessional conduct, CMC and the Board Defendants now claim that the Physicians' alleged disruptive and unprofessional conduct led to the Board Resolution. *See* Defs.' Br. in Opp'n to Temp. Inj. at p. 5 ("The Board's later Resolution to close the cardiology staff . . . was not based on the historical volume of patient referrals by the Plaintiffs to CMC but on disruptive conduct by the Plaintiffs that undermined CMC's goal of providing good cardiology and cardiovascular surgery services at CMC.") If this was the case, CMC failed to provide Plaintiffs the required procedural due process.

36.     Specifically, Article VIII, Section 1.d. of CMC's Bylaws provides that "when clinical privileges are proposed by recommendation to be reduced, altered, suspended or terminated, the staff member shall be afforded the opportunity of a hearing. The process of hearing and appeal shall be conducted according to procedures developed, with the approval of the Board, and incorporated in the Medical Staff Bylaws."

37.     Under CMC's Medical Staff Bylaws, whenever corrective action is initiated against a physician with clinical privileges for engaging in unprofessional conduct, it should be taken in accordance with the Medical Staff Rules and Regulations, Policies and Procedures. CMC's Rules and Regulations Regarding Inappropriate or Unprofessional Conduct sets forth the procedures to be followed to address unprofessional conduct, including documentation of such conduct, discussion with the physician, documentation of such discussions, and final warning. Thereafter, if such conduct continues, the physician may be suspended or terminated from the medical staff.

38.     Under CMC's Hearing & Appellate Review Procedure, a physician is entitled to a hearing if his clinical privileges are reduced, suspended, or revoked and if a limitation of his right to admit patients is recommended or imposed.

39.     If the Board Resolution, which effectively revoked the Physicians' clinical privileges, was the result of the Physicians' alleged unprofessional conduct as CMC and the Board Defendants now claim, CMC failed to follow its own procedures and deprived the Physicians of their procedural due process rights.

40.     As a result of CMC's actions, the Physicians have and will continue to incur injuries, losses, and damages.

## C.     TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

41.     The employment contract between Dr. Campbell and CMC is illegal and invalid as set forth above.  Since Dr. Campbell is not and cannot be an employee of CMC, he is not afforded immunity under the Texas Tort Claims Act.

42.     Dr. Campbell tortiously interfered with the Physicians' contractual relations with CMC and their patients.  Dr. Campbell attended Dr. Gaalla's peer review meeting to complain to

the committee about Dr. Gaalla's alleged misconduct when Dr. Campbell was not a member of the peer review committee. Additionally, Dr. Campbell made a presentation to the Medical Executive Committee ("MEC") of CMC on January 12, 2010, and made false representations to the MEC concerning the Physicians, including the misrepresentation that the Physicians were creating problems for Dr. Yahagi without just cause. In reality, the Physicians were refusing to use Dr. Yahagi due to his poor patient outcomes. Based on information and belief, Dr. Campbell's presentation to the MEC on January 12, 2010 lasted approximately 20 minutes. Finally, Dr. Campbell wrote in a patient's (J.B.) chart that Dr. Parikh did not have privileges to perform the procedure the patient needed.

43. Dr. Campbell's misconduct contributed to CMC awarding Dr. Campbell and other cardiologists the exclusive right to practice cardiology at CMC, thereby excluding the Physicians' practice there. Additionally, Dr. Campbell's inappropriate actions had the direct effect of interfering with the Physicians' patients, including Patient J.B. Several of the Physicians' patients have presented to CMC and were told that the Physicians no longer practice there or no longer had privileges there. Those patients were steered to the competing cardiologists at CMC. This inappropriate steering of the Physicians' patients will likely continue in the future and cause further damage.

**D.  TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS**

44. Dr. Campbell tortiously interfered with the Physicians' prospective relations with their future patients expected to present to CMC.

45. Dr. Campbell's misrepresentation in Patient J.B.'s medical chart indicating that Dr. Parikh did not have privileges to perform the procedure needed by Patient J.B. was an independently tortious act that amounts to fraud. Specifically, Dr. Campbell made a material

13

misrepresentation concerning Dr. Parikh's privileges at CMC and Dr. Parikh's ability to treat Patient J.B., which was intended to induce Patient J.B. to become Dr. Campbell's patient and further steer Patient J.B. to Dr. Yahagi, the only cardiac surgeon at CMC.

## E.   **DEFAMATION**

46.   Dr. Campbell published a statement of fact in Patient J.B.'s medical chart stating that Dr. Parikh did not have privileges to perform the procedure needed by Patient J.B. Dr. Campbell's statement was verifiably false and defamatory. Dr. Campbell's defamatory statements were made with actual knowledge of falsity or reckless disregard for the truth. Upon information and belief, Dr. Campbell also communicated and published this defamatory statement of fact to Patient J.B without justification or excuse. Dr. Campbell's defamatory statement injured Dr. Parikh's reputation and thereby exposed him to financial injury and impeached his integrity, virtue, and reputation. Dr. Campbell's defamatory statement constitutes statutory libel per se. *See* TEX. CIV. PRAC. & REM. CODE § 73.001. Additionally, Dr. Campbell's defamatory statement is libel per se because it injures Dr. Parikh's occupation as a cardiologist. Further, Dr. Campbell's defamatory statement to Patient J.B. is slander per se because it injures Dr. Parikh's business reputation. Alternatively, Dr. Campbell's defamatory statements constitute defamation by innuendo or implication and are therefore actionable.

47.   With regard to the truth of his statement, Dr. Campbell is liable without regard to fault (strict liability). Alternatively, Dr. Campbell was acting negligently or with actual malice with regard to the truth of his statements. Dr. Parikh's damages are presumed by law. Further, Dr. Parikh suffered pecuniary injury, including actual damages, loss of past and future income, loss of earning capacity, damages for injury to his reputation, personal humiliation, and mental anguish and suffering. In addition, because Dr. Campbell's defamatory statement was made with

14

malice, Dr. Parikh is entitled to exemplary damages. As set forth above, since Dr. Campbell is not and cannot be an employee of CMC, he is not afforded immunity under the Texas Tort Claims Act.

**F.    CIVIL CONSPIRACY**

48.    Based upon the allegations set forth above, CMC, the Board Member Defendants, and Brown engaged in a conspiracy with Dr. Campbell to deprive and defraud the Physicians of their privileges at CMC, causing the Physicians substantial damage. In addition, the conspiracy deprives patients at CMC from having the physician of their choice provide their critical medical services.

49.    Upon information and belief, CMC, the Board Member Defendants, and Brown acted illegally with Dr. Campbell in orchestrating the "consultant" report, defaming Dr. Parikh, and creating pre-textual reasons to exclude the Physicians from CMC. CMC's, Brown's, Campbell's, and the Board Member Defendants' true reason for excluding the Physicians from CMC is because they refused to violate the Anti-Kickback Statute and False Claims Act by making referrals to CMC based on the economic dictates of CMC. Rather, the Physicians made referrals based on the best interests of the patients in compliance with their Hippocratic Oath and the law.

50.    When the Physicians refused to "play ball" with CMC, CMC, the Board Member Defendants, and Brown conspired with Dr. Campbell to act illegally to try to achieve the result they wanted—economic benefit at the expense of the Physicians and patients.

**G.    APPLICATION FOR INJUNCTIVE RELIEF**

51.    In their Original Complaint, the Physicians asked this Court to restrict CMC from implementing the Board Resolution and limiting the Physicians' exercise of their hospital privileges to provide care and treatment to their patients at CMC. On February 24, 2010, the

Court granted the temporary restraining order. After reviewing the evidence and after a hearing on Plaintiffs' request for a preliminary injunction, the Court granted the Physician's request by order dated March 12, 2010.

52. The Physicians continue to seek a permanent injunction consistent with the terms of the Court's preliminary injunction. Specifically, the Physicians ask this Court to permanently enjoin CMC from implementing the Board Resolution and limiting the Physicians' exercise of their hospital privileges to provide care and treatment to their patients at CMC.

53. If the Physicians' request for permanent injunctive relief is not granted, immediate and irreparable injury, loss, and damage will result to the Physicians. Specifically, CMC has indicated in its February 17, 2010 memorandum to all members of the CMC medical staff that its closing of the cardiology department was effective immediately and that the Physicians would not be able to attend to any current inpatients after February 24, 2010. If CMC is not enjoined from closing its cardiology department and preventing Physicians from seeing their patients who routinely present to CMC and/or who are admitted to CMC, immediate and irreparable injury, loss and damage to Physicians (as well as their patients) will occur. Specifically, the Physicians will be precluded from treating their cardiology patients that are admitted to CMC. This will result in the loss of some or all of these patients as well as cause irreparable harm to the Physicians' goodwill with their patients. Additionally, their patients will be deprived of their right to select the physician of their choice. There is no adequate remedy at law to alleviate the risk of injury and loss other than that sought by this application. As set forth above, the Physicians are likely to prevail on their claims in this case.

54. This application for a permanent injunction is supported by the Verifications of Drs. Chandna, Parikh, and Gaalla.

16

## V.
## DAMAGES

55.     The Physicians have been significantly damaged and continue to incur significant damages as a result of the Defendants' acts and omissions set forth above.  The Physicians' damages caused by Defendants acts and omissions include actual damages, loss of patient goodwill, injury to their reputation among their patients, within the community and within the medical profession, lost earnings, lost earning capacity, loss of business, loss of benefits of contracts, and consequential damages.  In addition, the Physicians seek exemplary damages for the Defendants' violations of 42 U.S.C. § 1983 in that the Defendants' conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others.  Finally, the Defendants' tortious interference with existing contracts and prospective relations and defamatory remarks as set forth herein were reckless, malicious, and knowing, which also allows for the recovery of exemplary damages.

## VI.
## ATTORNEYS' FEES

56.     The Physicians have been required to retain legal counsel to prosecute this action against the Defendants.  The Physicians' attorneys' fees and expenses are recoverable pursuant to their claims under 42 U.S.C. § 1983.  The Physicians seek to recover their attorneys' fees incurred in prosecuting this matter in this U.S. District Court, any appeals to Fifth Circuit Court of Appeals and U.S. Supreme Court, as well as any certification to the Texas Supreme Court.

## VII.
## JURY DEMAND

57.     The Physicians hereby demand a trial by jury for all issues which are triable to a jury.

5760386v.1 Parikh/First Amended Complaint

# VIII.
# CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Physicians request that, upon final trial, a permanent injunction be issued consistent with the terms set forth above; and that the Physicians be awarded judgment against Defendants for the following:

(a) actual damages as requested within the jurisdictional limits of the Court;

(b) exemplary damages and/or punitive damages as requested above as found by the trier of fact;

(c) pre-judgment and post-judgment interest at the highest lawful rates;

(d) reasonable and necessary attorneys' fees and expenses incurred in the prosecution of this suit;

(e) all costs of court;

(f) all other relief, in law or equity, to which Plaintiffs may be entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000 (Telephone)
(512) 236-2002 (Facsimile)

By: /s/ Monte F. James
Monte F. James
Attorney-in-Charge
State Bar No. 10547520
Southern District Bar No. 29591
Joshua A. Romero
State Bar No. 24046754
Southern District Bar No. 725205

ATTORNEYS FOR PLAINTIFFS

5760386v.1 Parikh/First Amended Complaint

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument was served on all attorneys of record in the above entitled and numbered cause this the 6TH day of April, 2010, via the following:

| | |
|---|---|
| _____ | Certified Mail, Return Receipt Requested |
| _____ | Regular Mail |
| _____ | Facsimile |
| _____ | Overnight Delivery |
| ___X___ | Electronic Delivery |

Daniel M. McClure
Lance R. Bremer
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010

Rex Easley, Jr.
Cole Cole Easley PC
P.O. Box 510
Victoria, TX 77902-0510

_____/s/_____
Monte F. James

## VERIFICATION

STATE OF TEXAS       §
                                 §
COUNTY OF VICTORIA       §

    ON THIS DAY, Harish Chandna, M.D., personally appeared before me, the undersigned

notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs

in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' First Amended

Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement

contained in Paragraphs 12-22, 25, 31, 34-40, and 52-53 of the Complaint is within his personal

knowledge and is true and correct.


_____
**Harish Chandna, M.D.**


    SUBSCRIBED AND SWORN TO BEFORE ME on this the ___6th___ day of April, 2010,
by Harish Chandna.



DEANNA RAMOS
Notary Public
STATE OF TEXAS
My Comm. Exp. January 8, 2013

_____
Notary Public in and for the State of Texas

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF VICTORIA      §


ON THIS DAY, Dakshesh "Kumar" Parikh, M.D., personally appeared before me, the undersigned notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' First Amended Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement contained in Paragraphs 12-22, 25, 31, 34-40, and 52-53 of the Complaint is within his personal knowledge and is true and correct.


**Dakshesh "Kumar" Parikh, M.D.**


SUBSCRIBED AND SWORN TO BEFORE ME on this the 6th day of April, 2010, by Dakshesh "Kumar" Parikh.

DEANNA RAMOS
Notary Public
STATE OF TEXAS
My Comm. Exp. January 8, 2013

Notary Public in and for the State of Texas

## VERIFICATION

STATE OF TEXAS      §
                                §
COUNTY OF VICTORIA    §

ON THIS DAY, Ajay Gaalla, M.D., personally appeared before me, the undersigned notary public, and after being duly sworn stated under oath that he is one of the named plaintiffs in the foregoing Complaint; that he has read the above and foregoing Plaintiffs' First Amended Verified Complaint for Damages, Declaratory and Injunctive Relief; and that every statement contained in Paragraphs 12-22, 25, 31, 34-40, and 52-53 of the Complaint is within his personal knowledge and is true and correct.



Ajay Gaalla, M.D.

SUBSCRIBED AND SWORN TO BEFORE ME on this the 6th day of April, 2010, by Ajay Gaalla.

DEANNA RAMOS
Notary Public
STATE OF TEXAS
My Comm. Exp. January 8, 2013

Notary Public in and for the State of Texas

5773430v.1 132436/00001

3